Good morning, your honors. Inga Parsons, appointed counsel on behalf of Mr. Moore, I would like to reserve three minutes of my time for rebuttal. May it please the court, honorable counsel, and this court in general. There are a class of defendants, including Mr. Moore, who are now serving extended time in prison, when the law that put them there for that extended time has been declared unconstitutional. My client would have faced 77 to 96 months but for the career offender provision. Instead, he was sentenced under a guideline range of permitted is the principle of Johnson 2, and that is, when a provision fixes punishment, a reliance on the language of the ACCA clause, residual clause, which is, quote, otherwise involves conduct that presents a serious potential risk of physical injury to another, that provision is unconstitutionally vague. You don't need to convince us of that today, do you? No, not at all. It's just we want to make sure that we make a clear distinction between Beckles and where my client stands, which is under a mandatory sentencing guidelines. The mandatory guidelines were provisions that fixed punishment, and the residual clause of the definition uses that identical language in a fixed system. We know that the guidelines have the force and effect of law. That has been made clear in many cases, including Stinson, and it's not disputed by the government. So the question is, when you have a constitutional dimension to the guidelines, that constitutional dimension is triggered by the force of the mandatory guidelines. I was a federal defender in the Southern District of New York in 1990. I can tell you with all credibility, it was an incredibly mandatory system. The government reminded us of that at every turn. Can I ask you what we would do about, because under the mandatory system you could have departures, and I recognize that was a small subset of persons who might have been eligible for the departure, but suppose we had a case in which the defendant at issue arguably would have qualified for the departure. Well, the law itself should not be determined based on what was available as a departure. But to answer your question, those departures were highly fixed, and they were binding. This was not a system that we face now, where the departure was up to the judge under any of the provisions of 3553. My point, though, is that you're saying that even the departure would have been fixed? Well, it was a fixed system, yes. You could only depart under very circumscribed departures that were set forth in the guidelines. They were subject to appellate review. They were not at all the same system, which makes sense, because if the systems were the same, then Booker wouldn't have been decided as it had been decided. But there was some discretion to departures. There was discretion within that. Right. But the same thing Suppose you had a case with an upward departure. It would be pretty hard to argue in that case that the mandatory nature of the guidelines resulted in the sentence that non-mandatory guidelines would not have resulted in. Upward departures were highly regulated. My point is, if you did have an upward departure, if you did have an upward departure, it would be pretty hard to argue that the mandatory nature of the guidelines caused constitutional deprivation that a Beckel situation wouldn't cause. Well, it's under the same system, though. It's a system that requires those. And, indeed, under even ACCA, or the Armed Career Criminal Act, you can get below that statute by virtue of 5K1.1. In mandatory minimum sentences, you can get below that by virtue of 3553E. And, in fact, the judges use their discretion within those limited bases for either a departure or a reduction or to, in a sense, unhinge the mandatory minimums. That doesn't make ACCA less of a mandatory system. What do we do with, what weight, if anything, do we give to the fact that Booker itself has not been applied retroactively? Because Booker was procedural. Booker was the process by which you get to the system. The process no longer required adherence to that mandatory nature. The problem with the How is Booker procedural and this isn't? It's not about Booker being procedural in this instance. It's that the deprivation, the unconstitutional vagueness is of a statute that was applied, which affects a class of judges. No one was increasing sentences under Booker. They were providing a means, a different means of how you determine that sentence that was no longer mandatory. If we rule for you here and the Supreme Court, let's say in a year or two, takes a case and decides that Beckles does extend to the mandatory guidelines, your position is when the Supreme Court announces that, it won't then be a new rule? Correct, Your Honor. So that means... Well, not that... So what's supposed to happen? I might argue that, but I can tell you right now that I will bet you money that the government will argue that. Yeah, but I'm not... The thing that just puzzles me is what is a petitioner supposed to do in such a situation? Because at that point, I guess the position would be they're all out of luck if you file after the Supreme Court makes it clear. Well, my hope is that everybody did file. I felt like we did file every particular one we could. Do we know? I mean, do we have a sense of that? How many people have actually... Your Honor, I know the federal defenders was incredibly conscientious, and I was brought in on this case by virtue of being called and asked if I would take on this case, and I actually think I filed five or six of them because of that concern, that this was a new rule. And indeed, there was a split among a number of the lawyers about whether the new rule, which made Johnson retroactive, was really the date that we would go by in terms of the one year. And how would you articulate whether it's a new rule? We'd have to say that it's within Johnson. The idea is that this is just... Johnson's the new rule, and the outcome here is logically dictated by Johnson, too? It's the application of the principle of Johnson. We're not asking for an extension. We see Beckles as basically a carve-out. Yeah, but I mean, what's... Are there any words besides application of the principle that we have in the case law that's supposed to help me figure out when I'm just applying a principle and when I'm doing something that's new? Yes, it's... I mean, I like the language that was used... that's used by Sotomayor, and I have it somewhere regarding... You know, it's... You look at the rulings that the Supreme Court, and there's a reasonable application of that that's dictated by that. But you don't even have to go that far, because Johnson applies to this. It's the same language. It's a mandatory system. If you look at the Vargas case that I cited, where the Second Circuit, which is the only circuit I know to have... I don't know any circuits that have ruled against Johnson applying to mandatory. But the Second Circuit, which is no slouch, frankly, has said that they're going to allow that petition, because you just need... Because it wasn't foreclosed. It wasn't foreclosed, and I think that's a critical word, too. It wasn't foreclosed by... by Beckles, and that the petitioner in that case is now allowed to file the 2255 consecutive or successive, and that's what we're asking for. So why isn't the statutory minimum or statutory maximum the fixed sentence, as opposed to the guidelines? They're not mutually exclusive, Your Honor. If Beckles had wanted to say this applies to all the guidelines, they could very well have done that. But the point is, is that the mandatory guidelines did fix sentences. Very clearly it fixed sentences. And so that's the language that Beckles used when they were carving out why this principle, which has the same language, did not apply in a guidelines context, is because it doesn't fix sentences. The mandatory guidelines... And Beckles seems to make that quite clear. The mandatory guidelines were quite different from that. Were there limits on how far you could depart under the mandatory system when you were able to depart? I understand that there are limits on when you could depart, but once you got into the departure box, was there any limit on how far you could depart? I'm just trying to think. It's a good question. I'm trying to go back to those days. Do you think it matters? I don't, as a matter of fact, because whatever the departure was, it was reviewable if the statutory maximum is the fixed sentence and then there's a fixed sentence within it under the guidelines subject to a departure. But when you depart, you have discretion to depart back up to the fixed sentence by the statute. And arguably, the fixed sentence is fixed by the statutory maximum and not by the mandatory guideline. That would be the argument at least. Well, they're both fixing it. They're both binding. We had a system where both of those were binding. And that fixing it, fixed within the mandatory minimums and the maximums. And indeed, as I said, there were cases when there were opportunities to go below the mandatory minimum, despite it being a fixed sentence. But it was binding, and I think that's really the critical word, that those guidelines were binding and they were subject to appellate review and the court was constricted. The court had to work within a binding, fixed sentencing system. Thank you. Wait a minute. And Ms. Parsons, thank you for doing that. Thank you for taking some of those cases. Thank you for taking some of those cases. Good morning, Your Honors, and may it please the Court. Michael Rocker from the Department of Justice on behalf of the United States. The decision that Beckles makes quite clear that the Supreme Court has never decided the critical issue that's now posed here, which is whether the pre-Booker mandatory guidelines are even subject to constitutional vagueness questions. The issue is not. The rule that their claim is based on is not simply the substantive question of whether or not the mandatory residual clause is vague. They need to take an additional step in order to secure authorization in order to prevail. And that additional step, as Beckles shows in the advisory context, is does Johnson's ruling even apply? The Supreme Court has never resolved that question. It's an open question. And that single indisputable proposition of law compels the denial of this application and the one in the succeeding case. It seems to me you're addressing the analysis on the merits. But before us today, this is a second successive petition, right? Exactly. So we don't ask, how does the case come out? We ask, we look at the petition, and we ask, does it contain a new rule of constitutional law made retroactive? Well, it does contain a new rule of constitutional law, Johnson 2. Johnson 2 has been made retroactive by the Supreme Court. Your argument, as I understand it, is Johnson 2 is not going to do it for them. It won't get them home. Johnson 2 doesn't get it all the way home. But so what? Then you win on the merits. But that doesn't mean we don't grant the petition. I think it does, respectfully, because, look, Beckles... I mean, that doesn't mean we don't grant permission. Authorization, right. No, I think Beckles is very clear, and Justice Sotomayor's concurrence said we're not deciding a mandatory guidelines question. Well, that's the question that's presented. I don't think that this Court can certify that the proposed motions contain a rule of law that the Supreme Court has never recognized. It may be an open question, but that just means that the application is premature. Well, that depends on the degree of abstraction. I mean, you could say Johnson 2 is a rule that if a clause has vague language and fixes a sentence, it's unconstitutional. And it's then said, this particular law does do that. It's then, and Beckles said, that law doesn't do that. Right. And now we've got a question whether this law does that. Right. But the function of a successive application is not to break new ground and announce new rules of law, right? And the point is that this is an open question. The application is simply premature because the question of whether the mandatory guidelines are subject to vagueness challenges or, as Judge Barron said, whether Beckles would be extended to the mandatory setting, it simply hasn't occurred. And a second successive application is simply not the forum in which to make or announce new rules of law for the first time. For example, in an ACCA setting, a defendant who has an ACCA sentence can certainly invoke the Johnson rule and piggyback off of that rule to obtain authorization. This isn't an ACCA case. This is a guidelines case. What if there were another statute, ACCA Jr., that's just passed in some other area of substance law, but it was just the same as ACCA, only it had a different title and a few other different wordings? I like ACCA Jr. OK. Would you say, oh, we can't touch that one in a second or successive because the Supreme Court hasn't touched it? If that statute was akin to ACCA Sr. and it adjusted the mandatory minimum and the guidelines are functionally and fundamentally different because they don't set the minimum or maximum. I'm sorry. I didn't mean to interrupt. Sure. As I understand it, the mandatory guidelines, you could say, do set. Booker sort of tells us they do set it, don't they? No. Booker said that they have the force and effect of law and it severed them, the mandatory nature. But it didn't, as the colloquy between Judge Barron and my colleague was discussing, those ranges, even when the guidelines were mandatory, they don't determine the outer limits. Your Honor actually asked, what are the limits of a court's departure authority? The limits were the statutory parameters. A court could depart upwards if the top of the guidelines range was 15 years. Could every defendant qualify for a departure? No. So how do we know who could and who couldn't? I don't think it's made on a case-by-case basis. It's a question of how do the guidelines operate as a theoretical matter. That's bad for you, not good for you. Well, I'm not trying to say what's bad or good. I'm trying to say what's good. OK. So it isn't bad for you. No, I don't think so. Well, if they didn't do it on a case-by-case basis, that means that the judge didn't have total discretion to depart. And there were certain categories fixed by the mandatory guidelines as to who could get a departure. I don't think that the categories were fixed because the judge had the authority to depart. Would you expect any defendant? No. And so that's a consequence of the… But that doesn't mean that the mandatory guidelines fixed the sentence. And those people who couldn't qualify for a departure did. Well, that's no different than the advisory guidelines. If a judge doesn't know what varied, then the advisory guidelines are setting the range. No, no, no. That's because he doesn't want to. The mandatory guidelines, if I follow    But the judge could. No, no, no. But the judge could. No, no, no. But the judge could. If I follow you, certain defendants, by virtue of the guidelines, took away the judge's discretion to depart. As to those defendants, he had no discretion. I don't think he took it away because there's always a catch-all. There's always 5K2.0. The court always had discretion. And in Coon, which is a mandatory guidelines case, the Supreme Court said, Judges have broad discretion. We're going to review that for abuse of discretion. They have broad authority to decide whether to depart. As a practical matter, they may not have exercised that authority.    Judges have broad discretion. We're going to review that for abuse of discretion. They have broad authority to decide whether to depart. It would be. Well, What they say, they say, this is my only ground. Okay. If I just read the text of 2255, one might think, Well, if that's what you're arguing, Right. Then you get to go up, and then you'll lose on the merits. That's just a formal way of doing it. Before we get to whether they're right, Yeah. That they would get relief under that. Yeah. I think it's indisputable that the form their petition takes     is a claim that the only new right they're asserting is one recognized by the Supreme Court. Yeah. Because they call it Johnson 2. Okay. So I just want to, Yeah. Is there any case law that suggests I'm not supposed to look at it formally like that? And I'm supposed to look at it functionally with a peek at the merits, which is how good is their argument? I think we're completely, There's a lot of different concepts that are moving around here. Okay. In our view, the way the second successive provision operates is they have an affirmative burden to come forward and make this threshold showing as to two requirements. Yep. There's a new rule of constitutional law, and then it's been made retroactive by the Supreme Court. Yeah. And so merely alleging a rule of law has never been a sufficient basis to get you through the gate. So what do they have to do? They have to point to. Yeah. They pointed to one. Well, I don't think that Johnson 2 does all the lifting. Okay. So that's what I'm asking them. Yeah. How much? You don't think that they think it does? No, I understand. So what standard am I supposed to apply in evaluating whether the new rule of constitutional law made retroactive by the Supreme Court    Well, the test is the general gatekeeping language, which is, Okay. I'm not supposed to look at it formally like that. Yeah. But that doesn't mean that every time there's an open question, you get to get through the gate. Right. But it doesn't mean that you can only get through the gate if you put forward a rule that would win. No, that's right. So what is the thing? You think it's so clearly not applicable? Yeah, I think in this case, it doesn't test the limits because it's not even remotely plausible. The Supreme Court said... Is that the test? That's what I'm trying to figure out.    Is that the test? Is that the test? Is that the test? Is that the test? Is that the test? Is that the test? Is that the test? We're not saying that it's a question of good or bad of the relative merit. What we're saying is they have to identify a rule of constitutional law, a new rule that has been recognized by the Supreme Court that would apply to their case. That's all. It's not a complicated standard. The rule of law upon which they're relying doesn't get them all the way home because it's not an ACCA case. Excuse me. I'm sorry, Judge. Okay.    but that's not what we're talking about. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. Okay. That's a concurring opinion, that the majority opinion    Right. that the majority opinion I mean, Justin doesn't say that. that the majority opinion I mean, Justin doesn't say that. No, but there's no dispute. I mean, there's no dispute.  about fixing sentences Correct. about fixing sentences Correct. which is what their argument is. which is what their argument is. That's correct. We just respect... So why doesn't that get at least past the Prometheus Showing so that the District Court can grapple with it and perhaps rule in your favor if they think that Because I think respectfully that puts the cart before the horse. They have an affirmative obligation to come forward and identify a new rule. This Court is not sitting and speaking... But they are. But they've done it. But the rules have never been recognized. Sure it has. Johnson recognizes the rule and Johnson too says it applies retroactively. They say, that rule means we win. You say, that rule doesn't get you there. With respect, I think perhaps I'm not being clear. I think in order for them to prevail in the guidelines setting there are really two different rules that they need to have both in order to win. The Johnson rule doesn't get them all the way home. If Johnson got If Johnson carried the day then we wouldn't have Beckles. Let me ask you this. Because Johnson would have been validated in Beckles' guideline, right? But there's a separate rule. The separate rule is whether they're even amenable to the Baton's challenge. Beckles says they're not in the advisory context. I'm sorry, Judge Kaya. This is your chance  what's on our minds. Yes, I understand. Okay. In 25 seconds. If we were to rule and accept your argument and then if we were to rule and accept your argument and then a year or two from now the Supreme Court said we're wrong you're wrong Ms. Parsons is right Right. What would happen to this fellow? He'd be out of luck, wouldn't he? No, not at all. At that point they could come in and they'd have one year from the date of that new No, no, no. They said she was right today that Johnson is the new rule that applies retroactively. Then what would happen if my time is up if I can answer? Yes, you could because it seems to me he'd be out of luck. He'd have already used his second or successive. No, there's no limit. You can file another second or successive. There's no that's why it's called successive. You can file a second or a third or a fourth. Based on no new development in the constitutional law? If the Supreme Court were to I'm sorry if I understood your hypothetical All the Supreme Court says is that what Ms. Parsons has described as the law as we sit here today is exactly right. Johnson 2 does apply. Then they're recognizing that rule in the guidelines context and at that point they would have a perfectly viable claim and they would be able to get authorization. Not if they said it was clear from Beckles and clear from Johnson 2. I'm not following. If in a year they say actually mandatory guidelines are also within the Johnson 2 rule and always were you think that can't possibly happen? They think it can happen. It could. It could. But if that were to happen then I think there are a range of options. First of all What would it be? Well, one is as the government has done in ACCA cases today we've waived the statute of limitations and I'm not going on record saying that we would but that's certainly an option. If the Supreme Court were to say look, it's been clear all along from Johnson that the mandatory guidelines are subject to vagueness challenge and the residual clause is gone I think that the government would seriously look at that question. There are potentially arguments about equitable tolling under the circumstances if it's been clear all along. But what we're talking what I've assumed all along is that we're taking an additional step here. Just like Beckles tried to take that extra step and say the advisory residual clause is invalid the other half of that is the mandatory clause it just hasn't happened. If the Supreme Court were to say Beckles is limited to advisory but we agree the mandatory guidelines fix sentences and they can be challenged they'd have one year from that date. So I apologize for talking over the Court if the Court has no further questions I'll be appearing in the next case. Thank you Your Honors. What do you have to say about that uncertain government benevolence in the case of the client? I don't trust it Your Honor. I think that issue came up. The Begay case I think there was a flip-flop from the government. There's now been a flip-flop in terms of their position with respect to the application of the guidelines. So my client would be out of luck. And I really have no doubt that the government would argue that it was an extension and therefore does not state a new rule of law and therefore consecutive successive petitions would be unavailable. But just to be clear the district court really is the first court to resolve this even if it's a purely it's a purely legal issue because we just need to make that prima facie shame that we have potential merit to our petition. We believe we have done that quite effectively. The government may argue against that but that's something they can certainly argue at the district court level. And in Evans and Garcia they said that consistent with our statute and precedent we find good reason to refrain from a full inquiry at this stage even on a purely legal issue such as retroactivity. And so I think Vargas is helpful. It was a very helpful case for me because it showed a court who saw the footnote of a concurring judge regarding an open question and that did not preclude them from going back to the district court. The Johnson court never said this is a very limited holding only to armed career offender act and it's a very reasonable and logical application. Beckles is  exception. And I also believe and I'm looking at Judge Sotomayor's concurrence that when you read that open question that she put in her footnote that what she really is meaning in my view is less an open question that the Supreme Court is going to decide and more the way the Second Circuit looked at it which was the notion of not foreclosing this argument by petitioners which is what we're asking for the right to do to go back to the district court. If it's plausible that the mandatory guidelines fix the sentence, then your argument is that just follows night for the day from Johnson too. And I think it's also right on your view that if it fixes the sentence that it's just necessarily going to be a substantive rule so it would follow as night for the day that Welch would carry over to the   And I think that's also right. The substantive nature of it has already been determined. Substantive nature of? Of the rule. Of the change of the rule. I'm just asking the question of whether the mandatory guidelines I see because the one that I think is important is that it has been used to expand under a fixed sentence. My client tripled his penalty. And that's what we want to argue in front of Judge Young. Thank you.